# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
September 1, 2020

Lyle W. Cayce
Clerk

No. 20-30039
Summary Calendar

Raymond Durant; Nena Fairley,

*Plaintiffs—Appellees*,

*versus*

Tramell Brooks, Individually and in His Official
Capacity as a Gretna Police Officer,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:19-CV-147

Before Stewart, Higginson, and Costa, *Circuit Judges*.

Per Curiam:*

Officer Tramell Brooks appeals the district court's interlocutory order denying in part his motion for summary judgment based on qualified immunity. We affirm.

---

* Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

No. 20-30039

## I.

The following facts are undisputed. On the evening of March 16, 2018, Raymond Durant drove his vehicle to Key's Fuel Mart in Gretna, Louisiana. He drove there to pick up his fiancée, Nena Fairley, who worked at the gas station. Durant arrived at Key's a few minutes before Fairley was scheduled to get off work, which was at 9 p.m. Meanwhile, Gretna Police Officer Tramell Brooks was patrolling the area near Key's. As he drove by the gas station, he noticed that the lights were off above the store's gas pumps. He also noticed several people gathered around a couple of vehicles in the gas station's parking lot. One of the vehicles belonged to Durant, and he was among the group seen by Officer Brooks.

Durant, with Fairley in the passenger seat of his vehicle, started to drive out of the gas station's parking lot. But when he saw Officer Brooks driving by, Durant grew nervous, changed course, and reversed into a parking spot at the gas station. Officer Brooks thought this was suspicious. Although he had already driven past the gas station, he made a U-turn to head back in the direction of Key's.

At that point, Durant drove out of the Key's parking lot and, shortly thereafter, into the parking lot of a nearby Neighborhood Wal Mart. Officer Brooks observed Durant's vehicle accelerate through the Wal Mart parking lot "at a good rate of speed." Richard Street, where Durant and Fairley live, dead-ends into a street that borders the Wal Mart parking lot. Durant drove from the Wal Mart parking lot to Richard Street, where he parked his car. He and Fairley exited his vehicle and began walking toward their home.

What unfolded once Officer Brooks arrived at Richard Street is in dispute. But for the purposes of this appeal, at least this much is not in dispute: Officer Brooks searched Durant and Fairley, handcuffed them, and

placed them into the back of his patrol vehicle. Officer Brooks's colleague, Officer Matthew Kraly, then arrived to assist.

In a deposition, Durant testified that, while handcuffed and seated in the police cruiser, he pulled his phone from his pocket. He testified that he wanted to video record what was happening. According to Durant, when Officer Kraly saw him with the phone, he "punched [Durant] in the ribs a couple of times." Durant testified that Officer Brooks then "made it around there to assist [Officer Kraly]. And they wrestled the phone [away]." Durant also testified that Officer Brooks "put his dirty feet on [him]." Later on, while clarifying the details of the interaction, Durant testified that Officer Kraly jumped on him and punched him, with Officer Brooks coming over to "assist" and "help." Durant clarified that the two officers were "wrestling [him] together, both of them." Although Durant did not clearly testify that Officer Brooks punched or kicked him during the scuffle, he later stated in a post-deposition declaration that Officers "Kraly and Brooks . . . punch[ed] and kick[ed] me while I was handcuffed in the back seat."

Fairley's recollection of what transpired is similar to Durant's. At her deposition, she stated that she witnessed Officers Kraly and Brooks "tussl[e]" with Durant next to her in the back seat of the police vehicle. She also testified that she saw Officer Kraly punch Durant, and "[h]e kept punching him. And then Officer Brooks . . . picked up his foot, kicked him, and slammed the door." When asked where Officer Brooks punched or kicked Durant, Fairley testified that "I only seen (sic) Officer Brooks kick [Durant]."Nevertheless, she later stated in a post-deposition declaration that Officer "Kraly and Brooks . . . physically attacked [Durant], punching him and taking his phone by force."

Durant testified that his ribs were "a little sore" after the incident, but that he did not seek medical treatment for any rib pain. He also testified that

his physical pain, in general, "wasn't much." Instead, what appeared to bother him more were the "recurring nightmares" that happened "maybe once a week, twice a week."

Officer Brooks's deposition testimony tells a different story. He does not recall Durant ever pulling out a phone. What he does remember is that "no force was used." He testified that neither he nor Officer Kraly used any force on Durant.

Officer Brooks released Fairley at the scene. But he transported Durant to the Jefferson Parish Correctional Center in Gretna and booked him into the jail on several open attachments. Durant also was booked on a charge of threatening a public official based upon Officer Brooks's allegation that Durant threatened him on the ride to the jail. The charge was later dismissed.

On January 9, 2019, Durant and Fairley filed this civil rights lawsuit against Officer Brooks, the City of Gretna, Gretna Police Chief Arthur Lawson, and two unnamed police officers. The Defendants filed a motion for summary judgment on November 8, 2019. Officer Brooks claimed that he had qualified immunity for all the claims against him. The district court, on January 17, 2020, granted in part and denied in part the motion.

The court granted summary judgment to the Defendants on all of Fairley's claims and some of Durant's claims. But it denied summary judgment on Durant's: (1) Fourth Amendment excessive force claim against Officer Brooks; (2) bystander liability or "failure to intervene" claim against Officer Brooks; (3) *Monell* claim against the City of Gretna; (4) state law battery claim against Officer Brooks; (5) state law malicious prosecution claim against Officer Brooks; and (6) state law vicarious liability claims against the City of Gretna and Chief Lawson based on Officer Brooks's alleged battery and malicious prosecution.

No. 20-30039

Officer Brooks filed this interlocutory appeal arguing that the district court erred by denying him qualified immunity from Durant's excessive force and bystander liability claims. Durant's other remaining claims are not at issue on appeal.

## II.

"On an appeal of a denial of summary judgment on the basis of qualified immunity, our jurisdiction is limited to examining the materiality of factual disputes the district court determined were genuine." *Cole v. Carson*, 935 F.3d 444, 452 (5th Cir. 2019) (en banc). "Within the limited scope of our inquiry, review is de novo." *Id.*

## III.

Officer Brooks raises three issues on appeal. First, he argues that the district court relied on improper summary judgment evidence in considering his motion. More specifically, Officer Brooks contends that the court erred in considering Durant's post-deposition declaration to find genuine disputes of material facts because the declaration contradicted, without explanation, Durant's deposition testimony. Second, he contends that Durant's excessive force claim fails as a matter of law because Durant did not suffer a sufficient "injury" for Fourth Amendment purposes. And third, he avers that Durant's claim for bystander liability must fail because Durant presented insufficient evidence to support the claim.

Durant counters that we lack jurisdiction over this appeal because Officer Brooks's arguments relate to issues about the sufficiency of the evidence on which the district court found genuine disputes of material facts. To the extent Officer Brooks's challenge can be characterized as an issue of law regarding the excessive force claim, Durant argues that the district court correctly relied on this court's precedents in holding that Durant presented sufficient evidence to support an "injury" for his excessive force claim.

No. 20-30039

We first address Durant's jurisdictional argument before turning to Officer Brooks's remaining claims.

**A.**

In an interlocutory appeal like this one from an order denying qualified immunity in part, it is true that we lack jurisdiction "to resolve the genuineness of any factual disputes." *Cole*, 935 F.3d at 452 (quoting *Trent v. Wade*, 776 F.3d 368, 376 (5th Cir. 2015)). Nevertheless, "[w]here . . . the admissibility of particular evidence is critical to a [denial of] summary judgment founded on qualified immunity, this court has not hesitated to review the admissibility of the evidence on appeal." *Mersch v. City of Dallas, Tex.*, 207 F.3d 732, 735 (5th Cir. 2000). The district court expressly relied on Durant's declaration, in addition to his and Fairley's deposition testimony,[1] in finding genuine disputes as to several material facts underlying Durant's excessive force claim. We therefore have jurisdiction to review Officer Brooks's challenge to the district court's consideration of Durant's declaration. *See Miller v. Gaston*, 358 F. App'x 573, 574 (5th Cir. 2009) (per curiam) (unpublished) (reviewing challenge to admissibility of evidence relied on by district court in denying defendant qualified immunity); *Phillips v. City of Victoria*, 243 F. App'x 867, 870 (5th Cir. 2007) (per curiam) (unpublished) (same).

We also have jurisdiction to review Officer Brooks's claim that Durant's evidence of the injuries he suffered fails to establish a Fourth Amendment excessive force claim as a matter of law. This is exactly the type of conclusion of law that we have jurisdiction to review in orders denying an

---

[1] By contrast, the district court did *not* rely on Fairley's declaration in deciding whether Durant had created a genuine dispute of material fact for his excessive force claim. Accordingly, we do not consider Officer Brooks's arguments regarding the inconsistencies between her deposition testimony and statements in her declaration.

official qualified immunity. *See Trent*, 776 F.3d at 376 (5th Cir. 2015) (holding that appellate courts have jurisdiction to review legal determinations that underlie denials of qualified immunity); *Payne v. Dickerson*, 334 F. App'x 629, 630–31 (5th Cir. 2009) (per curiam) (unpublished) (reviewing whether the plaintiff established more than a de minimis injury to support an excessive force claim).

Nevertheless, we lack jurisdiction to review Officer Brooks's challenge to the district court's ruling regarding his bystander liability claim. He argues that there has been insufficient evidence to support the district court's finding that genuine disputes of fact exist about whether Officer Brooks saw Officer Kraly use unreasonable force and whether Officer Brooks had a reasonable opportunity to respond. Because Officer Brooks effectively challenges the "genuineness" of the factual disputes underlying these findings, we lack jurisdiction over this claim. *See Cole*, 935 F.3d at 452.

**B.**

Officer Brooks's primary complaint on appeal is that the district court improperly allowed Durant to oppose Officer Brooks's motion for summary judgment with an unsworn declaration that contradicted his deposition testimony. We review the district court's ruling on this evidentiary issue for abuse of discretion. *Phillips*, 243 F. App'x at 870.

"It is well settled that this court does not allow a party to defeat a motion for summary judgment using an affidavit that impeaches, without explanation, sworn testimony." *S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 495 (5th Cir. 1996). And yet, "[w]hen an affidavit merely supplements rather than contradicts prior deposition testimony, the court may consider the affidavit when evaluating genuine issues in a motion for summary judgment." *Id.*

No. 20-30039

Here, the district court did not abuse its discretion in relying on Durant's declaration. In his deposition, Durant testified that Officer Kraly punched him, Officer Brooks "assisted" and "helped" during the "wrestling," and Officer Brooks "put his dirty feet" on Durant. In his declaration, meanwhile, Durant states that, after Officer Kraly asked what Durant was doing with his phone, Officers "Kraly and Brooks then started punching and kicking me while I was handcuffed in the back seat . . . ." Although Durant's declaration was clearly carefully crafted in response to Officer Brooks's motion for summary judgment, it does not directly contradict his deposition testimony. Instead, his statement is more fairly characterized as supplementing and amplifying his deposition testimony. Thus, the district court did not abuse its discretion in considering the declaration to determine whether Durant established any genuine dispute of material fact that would preclude Officer Brooks's entitlement to qualified immunity.

## C.

Officer Brooks also argues that Durant's complaints of sore ribs and emotional distress—without corroborating medical evidence—are insufficient to establish an "injury" for excessive force purposes. In the context of this case, we disagree. "[A]s long as a plaintiff has suffered 'some injury,' even relatively insignificant injuries and purely psychological injuries will prove cognizable when resulting from an officer's unreasonably excessive force." *Alexander v. City of Round Rock*, 854 F.3d 298, 309 (5th Cir. 2017) (quoting *Brown v. Lynch*, 524 F. App'x 69, 79 (5th Cir. 2013) (per curiam) (unpublished)). Moreover, the law is "clearly established" that "once a suspect has been handcuffed and subdued, and is no longer resisting, an officer's subsequent use of force is excessive." *Carroll v. Ellington*, 800 F.3d 154, 177 (5th Cir. 2015).

No. 20-30039

Officer Brooks does not claim that Durant was resisting arrest while handcuffed in the back seat of the police cruiser. Instead, he testified that no scuffle happened at all. Meanwhile, Durant and Fairley testified that Officer Brooks used force on Durant while he was handcuffed and subdued in the police car. Such conduct amounts to unreasonably excessive force under our caselaw. *See id.* Accordingly, any injury suffered by Durant—even sore ribs—is sufficient to establish the injury element of his excessive force claim. *Alexander*, 854 F.3d at 309.[2]

## IV.

For the foregoing reasons, the district court did not reversibly err. We therefore affirm.[3]

---

[2] Officer Brooks attempts to distinguish *Alexander* on the ground that the excessive force claim there had been dismissed by the district court at the motion to dismiss stage of the litigation. *See* 854 F.3d at 309. This is a distinction without a difference. The rule of law from *Alexander* that we rely on did not turn on the procedural posture of the case. *See id.*; *see also Sam v. Richard*, 887 F.3d 710, 713-14 (5th Cir. 2018) (applying *Alexander* to plaintiff's excessive force claim on a motion for summary judgment).

[3] We note that the district court's 87-page opinion thoroughly recounted the disputed and undisputed facts and carefully applied them to the fact-sensitive claims in this qualified immunity case. The court appropriately dismissed certain claims while declining to grant summary judgment on a select few.