## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

———————

No. 16-50888
Summary Calendar

———————

United States Court of Appeals
Fifth Circuit

**FILED**

March 22, 2017

Lyle W. Cayce
Clerk

RAYBOURNE AND DEAN CONSULTING LIMITED,

>    Plaintiff - Appellant

v.

METRICA, INCORPORATED; METRICA RELOCATIONS PLUS,
INCORPORATED,

>    Defendants - Appellees

———————

Appeal from the United States District Court
for the Western District of Texas
USDC No. 5:14-CV-918

———————

Before STEWART, Chief Judge, and JOLLY and JONES, Circuit Judges.

PER CURIAM:*

Plaintiff-Appellant appeals the district court's order granting Defendants-Appellees' amended motion for summary judgment and dismissing the suit with prejudice.  We affirm.

**I.**

Metrica, Incorporated ("Metrica, Inc.") is a company owned and operated in San Antonio, Texas by Dr. Bruce Dunson and Nancy Dunson.  Metrica, Inc.

———————

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 16-50888

"provides government[s] and corporations an array of program support activities including global relocation and employee mobility services." Metrica Relocations Plus ("MRP"), a Delaware corporation and subsidiary and affiliate of Metrica, Inc., provides government and corporate personnel relocation and management services on an international level.[1] TEAM Relocations Limited ("TEAM") is a British company that awarded Metrica a contract to provide employee relocation services to TEAM's client, Royal Dutch Shell Corporation ("Shell"), in Nigeria. Under the contract, Metrica was to operate under the directive of TEAM.

Plaintiff-Appellant Raybourne and Dean Consulting Limited ("Raybourne") is a Nigerian-based corporation operating in Nigeria. In October of 2008, Metrica employee Agnes Soos contacted the CEO of Raybourne, Professor Emeka Okoli, seeking a business arrangement wherein Raybourne would act as an "In-Country Partner consultant" to Metrica in order to fulfill Metrica's contractual obligations with TEAM and Shell. According to the record, Raybourne's performance as a consultant to Metrica would involve delivering "a wide range of logistics, and relocation services, including housing support, lease record responsibilities, travel support, household goods shipping and customs clearance, communication support, hiring of staff and payroll, translation services, conference support, office support, and administrative support."

Within a few days, Metrica sent Raybourne a proposed draft consultancy and partnership agreement detailing the parameters of the project in Nigeria. Under the proposed agreement, Raybourne would operate as an independent contractor and "was expected to recruit, train and manage a core group of

---

[1] Hereinafter, Defendants-Appellees, Metrica Inc. and MRP, will collectively be referred to as "Metrica."

2

highly experienced individuals." In November 2009, Raybourne and Metrica "executed and signed" a "Preferred Supplier Agreement for Provision of International Destination Services in Nigeria" (hereinafter, "PSA") resulting in the formation of a contractual business arrangement between Raybourne and Metrica within the country of Nigeria for purposes of Metrica's fulfillment of its business obligations with TEAM.

Initially, Metrica advanced Raybourne start-up funds which it later deducted from its payments to Raybourne until the initial costs were totally defrayed. The parties worked under the PSA without incident for several years. Then in July 2012, Gary Whitney, CFO of Metrica, advised Okoli that Shell and TEAM were negotiating a new agreement that would require Metrica to reduce pricing by twenty-five percent. Dr. Dunson then requested via email to Okoli that Raybourne agree to decrease the price of its subcontracting services by twenty percent. Okoli expressed concern that the price drop would lead to a decrease in the quality of services that Raybourne would be able to provide. A few months later in November 2012, Metrica personnel indicated to Okoli that a new contract between Shell and TEAM had been finalized, however, TEAM remained in the process of negotiating a further price reduction for subcontracting services. Soon thereafter, according to Raybourne, the email address and portal access that he had been provided with by Metrica for purposes of communicating under the PSA was disabled. Raybourne alleges that he was thereafter incapable of reaching staff or personnel at Metrica, Inc. or MRP and could no longer access any previous correspondence, accounting records, business information, or trade information that had been generated by the parties under the terms of the PSA.

On December 3, 2012, Metrica personnel emailed Okoli to inform him that TEAM would be visiting the Nigerian location and, in advance of the visit,

No. 16-50888

Dr. Dunson and other Metrica staff would travel to Nigeria to assist Okoli in preparation for TEAM's arrival. According to Raybourne, during this visit to Nigeria, Metrica registered a new company called Metrica Logistics Nigeria Limited ("Metrica Logistics"), which thereafter assumed and took over all business operations that had previously been conducted between Raybourne and Metrica. Additionally, several of Raybourne's management and staff members soon left and went to work for Metrica Logistics. The following month, Dr. Dunson informed Okoli that Metrica was "terminating the operating agreement by the end of the year." Then on January 2, 2013, Dr. Dunson informed Okoli that he was providing thirty days' notice that the PSA governing the parties' business relationship would be terminated effective February 4, 2013.[2] On February 21, 2013, Dr. Dunson sent Okoli documentation to close out the business dealings between the parties. According to Raybourne, at this time, Metrica owed approximately $38,000 to Raybourne under the PSA for work performed through December 31, 2012, and the unpaid balance presently remains outstanding.

On October 16, 2014, Raybourne filed suit in federal court against Metrica seeking "all damages allowable by law, including statutory, actual, compensatory and punitive damages, attorneys' fees, costs, and pre- and post-judgment interest." Raybourne's complaint identified twenty-one causes of action and a jury-trial demand. The complaint listed nine allegations of contractual breach, all under the same contract; breach of duty of good faith and fair dealing; promissory estoppel; unjust enrichment; breach of fiduciary duty; unfair competition by misappropriation; common law misappropriation; common law fraud; tortious interference with employment relations,

---

[2] The PSA provided that either party could cancel the agreement upon providing thirty days' notice to the other party.

4

prospective economic advantage, economic opportunity, and lawful business; theft under the Texas Theft Liability Act; and vicarious liability.   In response to Raybourne's complaint, Metrica filed a motion for summary judgment, and ultimately an amended motion for summary judgment, wherein it denied all liability under the PSA and applicable law.

In an incredibly detailed and thorough seventy-page Report and Recommendation applying Texas law, the magistrate judge recommended granting Metrica's amended motion for summary judgment and dismissing with prejudice every claim asserted by Raybourne.[3]  The report analyzed all twenty-one claims asserted by Raybourne, concluding after discussion of each that there was an absolute lack of any competent evidence or authority submitted by Raybourne to survive summary judgment, who in most instances did nothing more than present unsupported, conclusory statements reiterating its position as stated in the original complaint.[4]  Raybourne filed ninety-nine pages of objections to the report.

Then in March 2016, upon conducting a de novo review, the district court adopted the Report and Recommendation in full pursuant to 28 U.S.C. § 636(b)(1), granted Metrica's amended motion for summary

---

[3] Additionally, the report disposed of a motion to strike that was not a subject of dispute between the parties and is not at issue on appeal.

[4] With respect to the alleged outstanding debt of $38,000 that Raybourne claimed to have never received from Metrica, the magistrate judge noted that "the only evidence before the Court, as presented by defendants, is the document titled 'final accounting,' which is an exhibit from Dr. Okoli's deposition and demonstrates an overpayment from MRP to plaintiff" as opposed to an outstanding debt owed.  Because Raybourne did not challenge the final accounting or offer evidence to contradict its calculations, the magistrate judge ultimately concluded that Raybourne actually owed an unpaid balance to Metrica, rather than visa versa.

No. 16-50888

judgment, and dismissed Raybourne's claims in their entirety.[5]   This appeal ensued.

## II.

"We review a district court's grant of summary judgment de novo, applying the same standards as the district court." *Hagen v. Aetna Ins. Co.*, 808 F.3d 1022, 1026 (5th Cir. 2015).   Summary judgment is appropriate if the record evidence shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Robinson v. Orient Marine Co.*, 505 F.3d 364, 366 (5th Cir. 2007); Fed. R. Civ. P. 56(a). "Unsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment." *See Brown v. City of Houston*, 337 F.3d 539, 541 (5th Cir. 2003).   "[R]easonable inferences are to be drawn in favor of the non-moving party." *Robinson*, 505 F.3d at 366.

## III.

On appeal, Raybourne re-asserts eighteen of its original twenty-one complaints against Metrica, half of which involve allegations of breach of contract.   In sum, Raybourne primarily alleges that Metrica violated the terms of the PSA by maliciously terminating the agreement, recruiting Raybourne's employees, and stealing its trade secrets and proprietary information, thereby destroying the company.   After conducting a de novo review of the record, the applicable law, and each of Raybourne's arguments on appeal, we agree with the courts below that Raybourne has failed to show that there is a genuine issue of material fact with respect to any single claim it advances and thus the

---

[5] As of that date, the only remaining claim in the suit was a counterclaim for breach of contract filed by Metrica against Raybourne.   In July 2016, Metrica filed a motion to dismiss the counterclaim which was granted by the district court prior to closing the case.

No. 16-50888

district court properly granted summary judgment in favor of Metrica. *See Robinson*, 505 F.3d at 366.

## IV. Conclusion

For the aforementioned reasons, we affirm in full the district court's summary judgment in favor of Defendants-Appellees.