# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

August 7, 2024

Lyle W. Cayce
Clerk

No. 23-20095

———————

Shanon Roy Santee,

*Plaintiff—Appellant*,

*versus*

Oceaneering International, Incorporated; Transocean Offshore Deepwater Drilling, Incorporated; Chevron USA, Incorporated,

*Defendants—Appellees*.

———————

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:21-CV-3489

———————

Before Stewart, Duncan, and Engelhardt, *Circuit Judges*.

Carl E. Stewart, *Circuit Judge*:

In this maritime personal injury case, Plaintiff Shanon Roy Santee ("Santee") appeals the district court's denial of his motion to remand and grant of summary judgment in favor of Defendants Oceaneering International, Inc. ("Oceaneering"), Transocean Offshore Deepwater Drilling, Inc. ("Transocean"), and Chevron USA, Inc. ("Chevron") (collectively, "Defendants"). Because Santee has at least some possibility of proving his Jones Act claims on the facts alleged, we conclude that the district

No. 23-20095

court erred in denying his motion to remand. Thus, we REVERSE and REMAND to the district court, with instructions to remand this matter back to state court.

## I. Facts & Procedural History

From 1999 to 2021, Santee worked in the offshore drilling industry as a remote-operated vehicle ("ROV") technician. ROVs are submersible machines that provide underwater visibility for offshore drilling operators and service areas unreachable by human divers. ROV technicians operate ROVs from a command center aboard a vessel and typically service the vessel for a twenty-one-day or twenty-eight-day period. During his career, Santee worked primarily for Oceaneering, a company that provides subsea engineering and exploration services. After 2016, he worked mostly aboard the *M/V Deepwater Conqueror*, a drillship serviced by Transocean, an offshore drilling contractor.[1] Chevron contracted with Oceaneering and Transocean to provide underwater exploration and drilling services.

In January 2021, Santee allegedly sustained a severe injury to his shoulder and neck while servicing an ROV onboard the *Deepwater Conqueror* in service to the Chevron contract. Santee's injury occurred while he was replacing a thirty-pound cursor pin on a launch and recovery system ("LARS"), a device that releases and recaptures ROVs from the water. The cursor pins hold the ROV in place during the ROV repair process. To conduct this routine maintenance, ROV technicians raise the LARS device with a hydraulic power unit, then climb a ladder to reach the port for the cursor pins. From that position, the technician then reaches up with one hand

---

[1] The drillship's owner and operator, Triton Conqueror GmbH, was not a named party in this suit.

2

to install the pin. During this motion, Santee alleged that he felt a "pop" and sharp pain in his right shoulder. Santee averred that his condition worsened after his injury and required surgical fusion of the vertebrae in his neck.

In September 2021, Santee filed suit against Defendants in Texas state court. He brought claims under the Jones Act,[2] general maritime law, and the Saving to Suitors Clause,[3] under theories of negligence and unseaworthiness against Defendants. Defendants then removed the action to the Southern District of Texas, asserting that federal question jurisdiction, general admiralty jurisdiction, and original jurisdiction under the Outer Continental Shelf Lands Act ("OCSLA")[4] governed Santee's claims.

Santee moved to remand the case to state court, arguing that his claims were not removable because he is a "seaman" under the Jones Act. Defendants countered that Santee fraudulently pleaded his Jones Act claims, thus providing the district court with exclusive jurisdiction under OCSLA. In his reply, Santee asserted that Defendants waived their fraudulent pleading argument because it was not raised in their notice of removal. The district court denied Santee's motion and held that he had fraudulently pleaded his Jones Act claim to avoid removal because he was not a seaman at the time of his injury. It further held that it had original jurisdiction under OCSLA because the *Deepwater Conqueror* was attached to a seabed of the Outer Continental Shelf ("OCS") at the time Santee was injured. The district court denied Santee's motion for reconsideration.

---

[2] 46 U.S.C. § 30104.

[3] 28 U.S.C. § 1333.

[4] 43 U.S.C. § 1333.

After the close of discovery, Defendants moved for summary judgment. The district court granted Oceaneering's motion for summary judgment on the basis that Santee could not maintain a claim for negligence against his employer as a matter of law because he was not a Jones Act seaman. Santee then filed motions to compel discovery and for a continuance of the summary judgment submission date. The district court denied both requests. The district court granted summary judgment in favor of Transocean and Chevron because it had determined that Santee was not a seaman, and thus was bound to the exclusive remedy provisions of the Longshore and Harbor Workers' Compensation Act ("LHWCA").[5] It further held that Santee's unseaworthiness claim against Transocean was barred under the LHWCA because he was not a Jones Act seaman. The district court also granted summary judgment in favor of Chevron on Santee's negligence and unseaworthiness claims due to the lack of evidence of operational control and ownership of the drillship. Santee timely appealed.

## II. Standard of Review

This court reviews "both the denial of a motion to remand and the grant of summary judgment de novo." *Sanchez v. Smart Fabricators of Tex., L.L.C.*, 997 F.3d 564, 568 (5th Cir. 2021) (en banc). Summary judgment is appropriate if the record evidence shows that there is no genuine dispute of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "Unsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment." *See Brown v. City of Houston*, 337 F.3d 539, 541 (5th Cir. 2003). "[R]easonable inferences are to be drawn in favor of the non-

---

[5] 33 U.S.C. § 901.

moving party." *Robinson v. Orient Marine Co.*, 505 F.3d 364, 366 (5th Cir. 2007).

### III. Discussion

On appeal, Santee raises five assignments of error. He challenges the district court's denial of his motion to remand and each of its summary judgments in favor of Oceaneering, Transocean, and Chevron. In the alternative, Santee asserts that the district court abused its discretion in denying his motion for a continuance to collect more evidence to oppose Transocean's and Chevron's motions for summary judgment. Because we conclude that Santee did not fraudulently plead his Jones Act claim, we hold that the district court improperly denied his motion to remand. Thus, our discussion is limited to this threshold removal issue.

*A. Governing Law*

The Jones Act provides "a seaman" a cause of action for negligence against his seafaring employer. 46 U.S.C. § 30104. However, only seamen may bring Jones Act claims. Such claims filed in state court generally are "not subject to removal to federal court." *Lewis v. Lewis & Clark Marine, Inc.*, 531 U.S. 438, 455 (2001). We have stated that "[i]t is axiomatic that Jones Act suits may not be removed from state court because [46 U.S.C. § 668] incorporates the general provisions of the Federal Employers' Liability Act, including 28 U.S.C. § 1445(a), which in turn bars removal." *Lackey v. Atl. Richfield Co.*, 990 F.2d 202, 207 (5th Cir. 1993).

However, a Jones Act claim that is "fraudulently pleaded," or pleaded where there is no possibility that the plaintiff can prove seaman status, may be removed if there is an independent basis of federal jurisdiction. *Hufnagel v. Omega Serv. Indus., Inc.*, 182 F.3d 340, 345 (5th Cir. 1995). Thus, remand is inappropriate where "resolving all disputed facts and ambiguities in current substantive law in plaintiff's favor, the court determines that the

plaintiff has *no possibility* of establishing a Jones Act claim on the merits." *Holmes v. Atl. Sounding Co.*, 437 F.3d 441, 445 (5th Cir. 2006) (emphasis added) (citation omitted), *abrogated on other grounds by Lozman v. City of Riviera Beach*, 568 U.S. 115 (2013). But where a party does not fraudulently plead a Jones Act claim, a district court's denial of a motion to remand constitutes reversible error. *See Lackey*, 990 F.2d at 208 (reversing and remanding to the district court and instructing it to "remand the case back to state court where it belongs").

The Supreme Court has established a two-pronged test to determine whether a party is a seaman under the Jones Act. *McDermott Int'l, Inc. v. Wilander*, 498 U.S. 337, 354–55 (1991). To be a seaman: (1) the plaintiff's duties must contribute to the function or mission of the vessel, and (2) the plaintiff must have a connection to the vessel or fleet of vessels that is substantial in duration and in nature. *See id.*; *Chandris, Inc. v. Latsis*, 515 U.S. 347, 368 (1995). In *Sanchez v. Smart Fabricators of Texas, L.L.C.*, our en banc court enumerated additional factors relevant to the second prong of the seaman test. 997 F.3d at 574. We have set out four inquiries relevant to this question: (1) whether the plaintiff is subject to "the perils of the sea," (2) whether the plaintiff owes "his allegiance to the vessel, rather than simply to a shoreside employer," (3) whether the plaintiff's work is sea-based or involves seagoing activity, and (4) whether the plaintiff's "assignment to [the] vessel is limited to a discrete task after which [his] connection to the vessel ends." *Id.* (citing *Chandris*, 515 U.S. at 359).

### B. Santee's Jones Act Claims

Here, the district court did not discuss the "perils of the sea" inquiry. Instead, it concluded that two of the other three factors weighed against Santee. It posited that Santee owed allegiance to Oceaneering, a land-based employer that did not own or operate the *Deepwater Conqueror*. It further held

that Santee's assignment was discrete or limited because he was not permanently assigned to the *Deepwater Conqueror* or to any fleet of vessels to which it belonged. The district court then noted that "[t]he only factor weighing in favor of finding Santee satisfies the nature requirement is the fact [that] his work was sea-based." Thus, it concluded that Santee was not a seaman under the Jones Act and denied remand based on his fraudulent pleading because he has "no reasonable possibility of establishing a Jones Act claim." Our review of the record leads us to a different conclusion.

At the outset, the first prong of the seaman test is easily satisfied because Santee's work clearly contributed to the function or mission of the vessel, as the ROV operations supported the *Deepwater Conqueror*'s underwater drilling efforts. With respect to the *Sanchez* factors for the second prong of the seaman test, it is also uncontested that the ROV work was sea-based and that Santee was subjected to the perils of the sea. With respect to the remaining *Sanchez* factors, Santee asserts that he has pleaded a classic dual allegiance case and argues that his assignment was not limited to discrete functions suggesting a limited connection with the vessel. He contends that Defendants failed to demonstrate that he "ha[d] *no possibility* of establishing his claim on the merits" because he is a Jones Act seaman. We agree.

In *Sanchez*, the en banc court addressed whether a welder that spent most of his career servicing one fleet of vessels was a Jones Act seaman. 997 F.3d at 576. The welder was working for a contractor to repair a docked vessel when he sustained a severe injury. *Id.* at 567. We noted that there are "two types of workers . . . found on drilling rigs": the "drilling crew" or "workers who support" drilling operations and the "specialized transient workers, usually employed by contractors." *Id.* at 576. The welder in *Sanchez* easily satisfied the first prong of the seaman-status test but was held to not be a seaman because most of the factors of the nature element of the second prong weighed against him. *Id.* at 575–76 (failing to satisfy exposure to perils of the

sea, assignment, and seagoing nature factors). The court determined that, based on the record, the welder did not satisfy the assignment factor because his assignments were limited to two specific repair jobs on vessels within the same fleet. The court concluded that the transient, specialized nature of his work weighed against a determination that the welder was a Jones Act seaman. *Id.*

Unlike the welder in *Sanchez*, Santee satisfies the "sea-based" work and perils of the sea factors. The record shows that he was exposed to the perils of the sea, his work was sea-based, his allegiance lied with both his shoreside employer *and* the *Deepwater Conqueror*, and that his assignments were not limited to the performance of a discrete task after which his connection to the vessel ended. The allegiance factor contemplates that a worker may have allegiance to both the vessel and his shoreside employer. *Id.* at 574 (examining whether the worker's allegiance was "to the vessel, *rather than simply to* [*his employer*]"). Defendants argue that Santee's allegiance is not to any vessel because his "record of work locations show[s] he was never permanently assigned to work aboard any one vessel or fleet of vessels." They further assert that allegiance solely to Oceaneering can be gleaned from "the fact that Santee recognized he could 'pick up extra jobs' [on other vessels] in between hitches on the" *Deepwater Conqueror*. But these arguments advance a restrictive view of the allegiance factor that neither this court nor the Supreme Court has adopted.

Binding jurisprudence demonstrates that a maritime worker may possess allegiance to both a vessel on which he has had longstanding employment *and* his shoreside employer. In *McDermott International, Inc. v. Wilander*, the Supreme Court held that the Jones Act "established a clear distinction between land-based and sea-based maritime workers" and that those "who owe their allegiance to a vessel *and not solely to a land-based employer, are seamen*." 498 U.S. at 347 (emphasis added). Here, Santee has

spent over 96% of his employment time in the last five years with Oceaneering (specifically assigned to the *Deepwater Conqueror*), reported to Chevron's project leader, and took orders from both Chevron and the captain of the vessel. The record evidence from Santee's affidavit and work history documents is sufficient to create at least some fact issue that survives the limited summary determination in a fraudulent pleading inquiry. *See Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 311–12 (5th Cir. 2002) (noting that a court "can employ a summary judgment-like procedure that allows it to pierce the pleadings and examine affidavits and deposition testimony for evidence of fraud or the possibility that the plaintiff can state a claim" under the relevant law); *Lackey*, 990 F.2d at 208 (applying the same procedure to the fraudulent pleading inquiry in Jones Act cases). For the purposes of this inquiry, the allegiance factor weighs in favor of Santee here.

With respect to the assignment factor, we conclude that Santee's assignment was not a discrete, transient job like the work done by longshoremen when a vessel calls in port. In *Sanchez*, this court noted that this consideration derives from the Supreme Court's decision in *Harbor Tug & Barge Co. v. Papai*, 520 U.S. 548 (1997), where it concluded that a plaintiff's work, limited to discrete repair engagements while the boat had been docked, did not support a determination that he was a seaman. *See* 997 F.3d at 571–72 (discussing 520 U.S. at 559–60). The *Sanchez* court noted that the welder's assignment was discrete because following the completion of his two welding assignments, the welder "would have no further connection to the vessel." *Id.* at 576. It also noted that a plaintiff's work on a vessel limited to a term was further evidence that the plaintiff's assignment did not weigh in favor of seaman status. *Id.* & n.72 (collecting cases); *see also Wilcox v. Wild Well Control, Inc.*, 794 F.3d 531, 538–39 (5th Cir. 2015) (holding that the plaintiff

had a discrete assignment aboard the vessel and was not a seaman because he was only assigned for one specific project for a clear two-month term).

Here, Santee averred that he never had an end date to his assignment, and that he surmised that he was indefinitely assigned to the *Deepwater Conqueror*. His work record supports that he was not assigned to a short-term, transitory task on the vessel. The fact that Santee could have picked up extra jobs between hitches and that he was never formally assigned to work aboard a specific vessel do not factor into whether he was substantially connected to the vessel and integral to its drilling operations. Furthermore, Santee stated in his affidavit that the nature of the ROV work was critical to the vessel's mineral exploration and drilling operations and was conducted for an indefinite period of time. This is sufficient to set out a Jones Act claim under the limited inquiry we conduct here.

We have previously stated that a court conducting a fraudulent pleading analysis "must resolve all disputed questions of fact from the pleadings and affidavits in favor of the plaintiff, and then determine whether there could possibly be a valid claim against the defendant[s] in question." *Lackey*, 990 F.2d at 208. Reading any conflicts of fact as to Santee's assignment and allegiance in his favor, we cannot say that his Jones Act claims "are baseless in law and in fact and serve[] only to frustrate federal jurisdiction." *Id.* at 207 (quoting *Dodd v. Fawcett Publ'ns, Inc.*, 329 F.2d 82, 85 (10th Cir. 1964) (internal quotation marks omitted)). In its denial of Santee's motion to remand, the district court omitted one of the *Sanchez* factors and failed to view the facts and pleadings in the light most favorable to Santee. This constitutes reversible error because, under our jurisprudence, Santee has a possibility of proving that he is a Jones Act seaman on this record. Because we have identified error in the district court's seaman status determination, we conclude that this case was improperly removed. *See* 28 U.S.C. § 1445(a). Where the removing defendants fail to demonstrate that a

plaintiff has fraudulently pleaded his Jones Act claim, the matter must be remanded back to state court. *Lackey*, 990 F.2d at 207–08 (reversing and remanding because the Jones Act provides seamen with the "right to choose a state court forum"). Thus, we need not address Santee's other arguments regarding jurisdiction or his alternative claims under 33 U.S.C. § 905(b).[6]

### IV. Conclusion

The district court erred in holding that Santee fraudulently pleaded his Jones Act claim, and thus this case was improperly removed. For the aforementioned reasons, we REVERSE the district court's denial of Santee's motion to remand and REMAND with instructions for the district court to remand this matter back to state court.

---

[6] If a party is not a Jones Act seaman, then his only remedy lies in the form of compensation benefits under the LHWCA. *Becker v. Tidewater, Inc.*, 335 F.3d 376, 386 (5th Cir. 2003); 33 U.S.C. §§ 904, 905(a).